STATE OF NORTH CAROLINA v. GEORGE CALE BUCKNER

No. 444A93

(Filed 8 December 1995)

**1. Jury § 153 (NCI4th)— first-degree murder—jury selection—whether the jurors could vote for death—no prejudicial error**

There was no prejudicial error in a first-degree murder prosecution where the prosecutor asked prospective jurors whether they could return a sentence of death if they found that an aggravating factor existed, that the aggravating factors outweighed the mitigating factors, and that the aggravating factors were sufficiently substantial to call for the imposition of the death penalty. Although defendant argued that the prosecutor repeatedly suggested to the jurors that they could decide this issue without reference to mitigating circumstances, a reasonable interpretation of the prosecutor's question is whether the juror could impose the death penalty if he or she found that the aggravating circumstances outweighed the mitigating circumstances. The purpose of the question was merely to screen potential jurors' views on capital punishment. Moreover, the court correctly charged in accordance with the North Carolina Pattern Jury Instructions and any error was cured by the trial court's instructions.

**Am Jur 2d, Jury § 279.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**2. Criminal Law § 454 (NCI4th)— first-degree murder—defendant's argument—evidence evaluated in light of severity of sentence**

There was no prejudicial error in a first-degree murder prosecution where the trial court did not allow the defendant to argue that the jurors should evaluate the evidence in light of the severity of the sentence. Although defendant's statutory rights under N.C.G.S. § 15-176.5 and N.C.G.S. § 84-14 were violated, there was no prejudice because the jury in this case was well aware of the severity of the consequence of its verdict, as well as the punishments defendant would be facing. *State v. Smith*, 335 N.C. 539, is distinguishable because the determination that the restriction of

defendant's argument in that case was prejudicial was based on the combination of two errors; the Court never decided whether the instructions to disregard arguments about punishment were alone prejudicial. Here, the jury having been repeatedly and specifically told during *voir dire* that the sentence for first-degree murder was either life in prison or death, no reasonable possibility exists that a different result would have been reached had the error not been committed.

**Am Jur 2d, Trial § 572.**

**3. Criminal Law § 439 (NCI4th)— first-degree murder— closing arguments—specific trial testimony—defendant not allowed to argue—no prejudicial error**

There was no prejudicial error in a first-degree murder prosecution where defendant was not allowed to repeat specific trial testimony during closing arguments. Defendant was attempting to illustrate how this testimony contradicted and thus impeached other testimony, the purpose for which this testimony was presented. Defendant should have been permitted to continue with his argument, but the ruling did not constitute prejudicial error because defendant was able to argue that there were discrepancies and the jury was specifically instructed to remember the evidence; the value of this impeachment evidence was slight when considered with other evidence presented to the jury; this evidence does not bear on the issues of defendant's intent on the night of the murder and does not suggest that an accomplice had any intent to kill the victim; and defendant was allowed to argue other testimony of greater significance.

**Am Jur 2d, Trial §§ 632, 692.**

**4. Criminal Law § 468 (NCI4th)— first-degree murder—closing arguments—defendant not allowed to argue sentencing or specific testimony—combined effect not prejudicial**

There was no prejudicial error in the guilt phase of a first-degree murder prosecution where defendant contended that the combined effect of the two previous issues, not allowing defendant to argue that the evidence should be evaluated in light of the severity of the sentence and not allowing defendant to repeat certain specific testimony during closing arguments, required a new trial. The two arguments at issue would have had a very limited

effect on the ultimate decision of the jury and defendant has not established that a reasonable possibility exists that a different result would have been reached had the errors not been made.

**Am Jur 2d, Trial § 572.**

5. **Criminal Law § 426 (NCI4th)— first-degree murder—prosecutor's argument—defendant's refusal to talk to police—impeachment—no error**

There was no plain error in a first-degree murder prosecution where the prosecutor's closing argument referred to defendant's refusal to talk to the police. There was no evidence that defendant had been read his *Miranda* rights at the time of the silence and inaction referred to by the prosecutor, and the arguments made by the prosecutor were permissible as impeachment of defendant's testimony. Defendant's entire defense was based on his being a police informant who was at the scene of the crime attempting to gather incriminating evidence against the victim. It would have been natural for defendant to have told the police that an accomplice shot the victim and to have helped the police gather evidence even before defendant was brought to the police station; evidence that he did not do so contradicted his testimony. Additionally, it would have been natural for defendant to tell police that he had not shot anyone and that an accomplice had shot the victim when confronted with the accomplice's statement identifying defendant as the triggerman. Although defendant also argues that the prosecutor used defendant's reliance on his constitutional rights as substantive evidence of defendant's guilt, in the limited circumstances of this particular case, the argument was made to impeach defendant's testimony at trial and the court did not err in allowing the argument.

**Am Jur 2d, Trial § 557.**

**Impeachment of defendant in criminal case by showing defendant's prearrest silence—state cases. 35 ALR4th 731.**

6. **Criminal Law § 796 (NCI4th)— first-degree murder— instructions—aiding and abetting**

There was no plain error in a first-degree murder prosecution in the court's instructions on aiding and abetting where defendant argued that the trial court failed to instruct that a defendant can-

not be guilty as a aider and abettor unless the defendant had the requisite *mens rea* for conviction of the crime charged, but the court used the phrase "knowingly advised, instigated, encouraged, procured or aided the other person or persons to commit the crime," and further instructed that to be guilty defendant "must aid or actively encourage the person committing the crime or in some way communicate to this person his intention to assist in its commission." These instructions clearly convey that for the jury to find defendant guilty under the theory of aiding and abetting, defendant had to have knowingly participated in the murder based on an intent to assist in committing the crimes for which defendant was charged.

**Am Jur 2d, Trial § 1256.**

**7. Constitutional Law § 342 (NCI4th)— first-degree murder— presence of defendant at proceedings**

There was no error in a first-degree murder prosecution where defendant was not present on five occasions. The first was a pre-trial conference which, as it was prior to the commencement of trial, did not involve error, constitutional or otherwise. The second occasion occurred when the court listened to a tape recording in chambers outside the presence of defendant and with defense counsel's permission but made the decision as to the admissibility of the tape later in defendant's presence. On the third occasion the court took care of housekeeping matters while waiting for a late juror; when counsel began a discussion about a *voir dire* on the admissibility of certain tape recordings, the court stopped the discussion and began the conversation anew after defendant entered the courtroom. The fourth occasion was when the court asked in the absence of defendant whether the jurors were all back from a break, handed the bailiff a form to give to the jurors, and told counsel to start considering when the court should convene if the jury did not reach a decision as to defendant's sentence that day. And the fifth occasion, when the trial court ordered outside defendant's presence that the sentences for the noncapital offenses would run consecutively, occurred in the presence of defense counsel, with defense counsel's consent, and at a time when defendant had just been sentenced to death and was emotionally distraught. In all five instances at least one of defendant's counsels was present and representing defendant's interests, a record was made of everything that occurred outside

STATE v. BUCKNER

[342 N.C. 198 (1995)]

defendant's presence, and defendant's presence would have made no difference in the outcome of any of the conversations.

**Am Jur 2d, Criminal Law §§ 692-694, 698, 699, 901, 902, 925, 927, 934.**

**Accused's right, under Federal Constitution, to be present at his trial—Supreme Court cases. 25 L. Ed. 2d 931.**

8. **Criminal Law § 496 (NCI4th)— first-degree murder—deliberations—request to rehear testimony—denial not plain error**

There was no plain error in a first-degree murder prosecution where the trial court refused to grant the jury's request to rehear certain testimony, including that of defendant. The court granted the initial portion of the request, to review multiple pieces of evidence in the jury room, but specifically stated that it was denying the request to review testimony in its discretion and as a practical matter. Nothing in the record indicates that the trial judge was acting under a misapprehension of the limits of his discretion and the testimony covered over five hundred transcript pages; defendant's testimony alone spanned three days. The court never addressed the question of whether the court reporter could read back the testimony to the jury, but this request was never made by the jury.

**Am Jur 2d, Trial §§ 1685, 1688.**

9. **Larceny § 25 (NCI4th); Constitutional Law § 189 (NCI4th)— armed robbery and larceny—larceny as lesser included offense—double jeopardy—judgment arrested**

A judgment on a felonious larceny conviction was arrested where defendant was also found guilty of robbery with a dangerous weapon. Defendant argued that larceny is a lesser included offense of robbery with a dangerous weapon and that his double jeopardy rights were violated since the larceny was part of the same continuous transaction as the robbery with a dangerous weapon.

**Am Jur 2d, Larceny § 13; Robbery §§ 9, 13, 17.**

10. **Criminal Law § 1355 (NCI4th)— first-degree murder—mitigating circumstances—no significant history of prior criminal activity—no error in submitting**

There was no error in a first-degree murder sentencing hearing in submitting over defendant's objection the statutory miti-

gating circumstance of no significant history of prior criminal activity where defendant's felony convictions were closer in time to the crimes for which he was tried than the convictions in *State v. Lloyd*, 321 N.C. 301, in which the submission of the circumstance was upheld; all of defendant's charged criminal activity occurred within a brief period of time; most of the criminal activity was nonviolent; and defendant received probation and a suspended sentence for his prior convictions. Based on the evidence in this case, a rational juror could conclude that defendant did not have a significant history or prior criminal activity at the time of the murder.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**11. Criminal Law § 680 (NCI4th)— first-degree murder—sentencing—nonstatutory mitigating circumstances—peremptory instructions**

The trial court did not err in a first-degree murder sentencing hearing by refusing to peremptorily instruct the jury on nonstatutory mitigating circumstances. If the evidence supporting a nonstatutory mitigating circumstance is uncontroverted and manifestly credible, the defendant is entitled to a peremptory instruction on that circumstance upon request, but must specify the particular mitigating circumstance deemed deserving of a peremptory instruction and a peremptory instruction for nonstatutory mitigating circumstances should reflect the distinction between nonstatutory and statutory mitigating circumstances. Here, defendant did not specifically request that peremptory instructions be given for all forty nonstatutory mitigating circumstances, and the only nonstatutory mitigating circumstance for which defendant specifically requested a peremptory circumstance, that defendant was a hard worker, could not be deemed uncontradicted and manifestly credible.

**Am Jur 2d, Criminal Law § 598; Trial § 1415.**

**12. Criminal Law § 454 (NCI4th)— first-degree murder—sentencing—prosecutor's arguments—mitigating circumstances**

There was no abuse of discretion in a first-degree murder sentencing hearing where the trial court overruled defendant's objections to prosecutorial arguments which he contended mischaracterized mitigating circumstances. Viewed in its entirety, the

prosecutor's argument did not misrepresent mitigating circumstances to the jury; in light of earlier definitions of mitigating circumstances given by the prosecutor, allowing these remarks was not an abuse of discretion. Furthermore, the trial court correctly instructed the jury as to the meaning of mitigating circumstances after the prosecutor had finished his closing argument.

**Am Jur 2d, Criminal Law § 598; Trial §§ 640, 841.**

**13. Criminal Law § 454 (NCI4th)— first-degree murder—sentencing—defendant's argument restricted—statutory aggravating circumstances not presented—not allowed to argue**

There was no abuse of discretion in a first-degree murder sentencing hearing in the trial court not allowing defendant to tell the jury in his argument about the statutory aggravating factors that the State did not present. The trial court's decision was based upon its a belief that absence of an aggravating circumstance is not evidence of a mitigating circumstance, a reasonable interpretation of *State v. Brown*, 306 N.C. 151.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 640, 841.**

**14. Criminal Law § 454 (NCI4th)— first-degree murder—sentencing—defendant's argument—people waiting for him in prison—not allowed**

The trial court did not abuse its discretion in a first-degree murder sentencing hearing by not allowing defendant to argue that some of the people he had testified against would be waiting for him in prison. The court allowed defendant to ask the jury to consider the fact that defendant had testified or was ready to testify against people who had received prison sentences in the North Carolina Department of Correction, but did not allow the argument in question based on the fact that no evidence was presented as to the state of mind of the criminals defendant was willing to testify against or if these people were in fact waiting for defendant to arrive at prison.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 640, 841.**

**15. Criminal Law § 1325 (NCI4th)— first-degree murder—capital sentencing—Issues Three and Four**

The trial court did not err in a first-degree murder sentencing hearing by reinstructing the jurors that they "may" consider miti-

STATE v. BUCKNER

[342 N.C. 198 (1995)]

gating circumstances at Issues Three and Four, after the initial instruction informed the jurors that they "must" consider mitigating circumstances at that stage.

**Am Jur 2d, Trial § 841.**

16. **Criminal Law § 1339 (NCI4th); Constitutional Law § 175 (NCI4th)— first-degree murder—sentencing—aggravating circumstances—murder during course of another crime**

The trial court did not err during a first-degree murder sentencing hearing by submitting the aggravating circumstance that the murder was committed while defendant was engaged in the commission of a robbery.

**Am Jur 2d, Trial § 841.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant committed murder while under sentence of imprisonment, in confinement or correctional custody, and the like—post-*Gregg* cases. 67 ALR4th 942.**

17. **Jury § 141 (NCI4th)— first-degree murder—jury selection—questions concerning parole—not allowed**

The trial court did not err in a first-degree murder prosecution by not allowing defendant to question jurors about their conceptions of life imprisonment and parole eligibility for a person convicted of first-degree murder.

**Am Jur 2d, Criminal Law § 575; Jury § 206.**

**Prejudicial effect of statement of prosecutor as to possibility of pardon or parole. 16 ALR3d 1137.**

18. **Evidence and Witnesses § 287 (NCI4th)— first-degree murder and robbery—evidence of prior robbery**

There was no plain error in a first-degree murder prosecution where the trial court allowed the prosecution to present the testimony of the victim of a prior robbery when defendant had already admitted committing the robbery during his testimony and had indicated a willingness to stipulate the existence of the robbery conviction.

**Am Jur 2d, Evidence §§ 404, 413.**

**19. Criminal Law § 1337 (NCI4th)— first-degree murder—robbery defined as involving violence**

The trial court did not err in a first-degree murder sentencing hearing by defining robbery as a felony involving violence or the threat of violence, thereby in defendant's contention expressing an opinion on an aggravating circumstance.

**Am Jur 2d, Criminal Law § 598; Robbery § 1; Trial § 841.**

**20. Criminal Law § 1348 (NCI4th)— first-degree murder—mitigating circumstances—defined**

The trial court did not err in a first-degree murder sentencing hearing by defining mitigating circumstances as matters about a crime making a punishment less than death appropriate.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial § 1445.**

**21. Criminal Law § 1363 (NCI4th)— first-degree murder—nonstatutory mitigating circumstances—instructions**

There was no plain error in a first-degree murder sentencing hearing where the court instructed the jury that to find a nonstatutory mitigating circumstance, the jury had to find it existed and then whether it had mitigating value.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial § 1445.**

**22. Criminal Law § 1323 (NCI4th)— first-degree murder—sentencing—instructions—consideration of mitigating circumstances at issue three**

The trial court did not commit plain error in a first-degree murder capital sentencing hearing by instructing jurors on their consideration of mitigating circumstances at Issue Three.

**Am Jur 2d, Trial §§ 1441, 1445, 1447.**

**23. Criminal Law § 1327 (NCI4th)— first-degree murder—sentencing—duty to recommend death**

There was no plain error in a first-degree murder capital sentencing hearing where the trial court instructed the jurors that they had a duty to recommend death if they found the sentencing issues against defendant.

**Am Jur 2d, Trial §§ 1441, 1445, 1447.**

STATE v. BUCKNER

[342 N.C. 198 (1995)]

**24. Criminal Law § 1329 (NCI4th)— first-degree murder—sentencing—Issues Three and Four—unanimous verdicts**

The trial court did not commit plain error in a first-degree murder capital sentencing hearing by instructing the jurors that they had to reach unanimous verdicts on Issues Three and Four.

**Am Jur 2d, Trial §§ 1441, 1445.**

**25. Homicide § 493.1 (NCI4th)— first-degree murder—premeditation and deliberation—grossly excessive force**

The trial court did not commit plain error in a first-degree murder prosection by instructing the jury that evidence of the use of grossly excessive force could be used to infer premeditation and deliberation where the evidence in this case supports a finding that the victim was shot twice in the body, and that defendant then moved closer and shot the victim in the head.

**Am Jur 2d, Homicide § 45.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**26. Criminal Law § 796 (NCI4th)— first-degree murder—aiding and abetting—acting in concert—instructions—actual or constructive presence**

There was no plain error in a first-degree murder prosecution where defendant contended that the court erred in its instructions on aiding and abetting and acting in concert by failing to instruct the jury that a defendant cannot be guilty under these theories unless he is actually or constructively present at the scene of the crime, but all of the evidence, and defendant's own testimony, established that defendant was in fact present.

**Am Jur 2d, Trial § 1256.**

**27. Criminal Law § 1326 (NCI4th)— first-degree murder—capital sentencing—instructions—burden of proof**

There was no plain error in a first-degree murder capital sentencing hearing where the court instructed the jury that defendant has the burden of establishing mitigating circumstances by a preponderance of the evidence, which meant that defendant had to satisfy the jury as to the existence of mitigating circumstances.

**Am Jur 2d, Trial §§ 1441, 1445.**

**28. Criminal Law § 1373 (NCI4th)— first-degree murder— death sentence—not disproportionate**

A sentence of death in a first-degree murder prosecution was not disproportionate where the aggravating circumstances found by the jury were supported by the evidence, nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and the penalty is proportionate to other cases in which the death penalty has been affirmed, considering both the crime and the defendant. While this was a robbery-murder case, in several of which juries have returned life sentences, the victim here was murdered in the sanctity of his own home rather than at a convenience store and there was no evidence of any impairment of defendant's ability to appreciate the criminality of his conduct, defendant was convicted not solely upon the theory of felony murder but also on the theories of premeditation and lying in wait, and the victim was shot three times, once after he had fallen to the ground wounded. The most significant feature of this case is that defendant committed this murder by lying in wait for his victim.

**Am Jur 2d, Criminal Law § 628.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Beal, J., at the 7 September 1993 Criminal Session of Superior Court, Gaston County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments for robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, and felonious larceny was allowed 22 September 1994. Heard in the Supreme Court 12 April 1995.

*Michael F. Easley, Attorney General, by John H. Watters, Special Deputy Attorney General, for the State.*

*Richard A. Rosen and Winston B. Crisp for defendant-appellant.*

PARKER, Justice.

Indicted for the first-degree murder of Eddie Marvin Dow ("victim") in violation of N.C.G.S. § 14-17, defendant was tried capitally. The jury found defendant guilty of first-degree murder on the theories of premeditation and deliberation, felony murder, and lying in wait.

STATE v. BUCKNER

[342 N.C. 198 (1995)]

The jury also found defendant guilty of robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, felonious larceny, and possession of stolen goods. Following a sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death for the murder conviction. The trial court sentenced defendant accordingly. The trial court also sentenced defendant to ten years' imprisonment for the conspiracy to commit robbery with a dangerous weapon, forty years' imprisonment for robbery with a dangerous weapon, and ten years' imprisonment for felonious larceny, each sentence to run consecutively. The trial court arrested judgment on the conviction for possession of stolen goods. We arrest judgment on the felonious larceny conviction and otherwise conclude that the jury selection, guilt-innocence phase, and sentencing at defendant's trial were free from prejudicial error; and the death sentence is not disproportionate.

The State's evidence tended to show that on the night of 19 February 1992, defendant met with Anthony Cathcart, Dennis Eason, and Jamie Bivens, at Cathcart's home. Earlier that day the men had discussed robbing the victim, a local bondsman for whom Bivens, Eason, and defendant had worked in the past. The victim was known to carry large sums of money in a briefcase. The State presented evidence that defendant had been talking about robbing the victim for some time and that it was his idea to rob the victim on this night.

When defendant and Bivens arrived at Cathcart's home around 8:00 p.m., Bivens went into the house and changed into camouflage clothing. Bivens also had ski masks for himself and defendant and socks which he wore on his hands. Defendant was wearing a long leather jacket and Isotoner gloves and was carrying his brother's SKS rifle; he did not change his clothes. All four men got into Bivens' Jeep and drove towards the victim's home. Eason and Cathcart dropped Bivens and defendant off at the top of the victim's driveway and then went to meet their dates for the evening.

After exiting the vehicle, defendant and Bivens walked towards the victim's home. They stopped and hid behind a utility building located near the victim's house and waited for the victim to get home. After the victim pulled into his carport and got out of his car, defendant shot the victim three times: once in the back, once in the shoulder, and once in the head. The head wound was fatal, but either of the other two wounds also could have been fatal.

Defendant and Bivens then grabbed the briefcase in which the victim carried his money, broke into the victim's car, and drove the vehicle from the scene of the crime. Defendant and Bivens abandoned the victim's car in a parking lot and fled on foot into the woods with the briefcase. As the two men ran, they discarded car keys, ski masks, the socks Bivens had on his hands, and the rifle. While in the woods, defendant and Bivens opened the briefcase, removed over $25,000, and discarded the briefcase. Defendant also hid the murder weapon in the woods.

Defendant and Bivens eventually made it out of the woods and walked to a Mini-Mart, where Bivens attempted to call Eason and Cathcart. Eason and Cathcart were not at home, so defendant called his friend Paul Bridges to come pick up him and Bivens. Bridges picked them up and then drove them to Gaston Memorial Hospital, where a car belonging to another of defendant's friends was parked with the keys in it. Defendant and Bivens borrowed the car to drive to defendant's home to get a change of clothes. On the way back to the parking lot, Bivens discarded his boots and some of the clothes he had been wearing. Eason and Cathcart then picked up defendant and Bivens in the hospital parking lot.

When Bivens and defendant got into the car, defendant told Eason and Cathcart that he shot the victim and that "his [victim's] brains were all over the carport." The four men then went to Bivens' and Eason's apartment and split up the money. While they were at the apartment, Eason's mother called to tell the men that the victim had been killed. The four men left the house to take Eason and Cathcart to Cathcart's house for the night. After defendant and Bivens dropped off the other two men, they went to the victim's office and met with his family. Bivens and defendant spent the night with the victim's family, traveling between the office, the scene of the crime, and the victim's brother's home. The two men also attended the victim's wake and funeral.

On 23 February 1992, based on information they received from Cathcart and two girls, the police asked defendant and Bivens to come to the police station. At the police station Bivens confessed to his involvement in the crime but claimed that it was defendant who actually killed the victim. Bivens also claimed that the robbery was defendant's idea and that he had only gone along with defendant's plan because defendant threatened to harm his wife and unborn

child. On the same day he confessed, Bivens helped the authorities recover some of the physical evidence hidden in the woods.

While Bivens was confessing, defendant was left in a room alone where he fell asleep. The police officers eventually came back, woke him up, and confronted him with Bivens' claim that defendant killed the victim. Defendant responded by saying that he had not shot anybody and that he was willing to make a statement but that he wanted his attorney present before he would make any statement. The officers stopped questioning defendant but did not contact an attorney for him.

Defendant presented evidence that he was a police informant and that he had been asked by the Gastonia City Police and a multijurisdictional task force to obtain incriminating information on the victim. Defendant testified that it was Bivens' idea to rob the victim and that defendant had gone along with the idea in the hopes of gathering some evidence against the victim. Defendant admitted that he went with Bivens to the victim's home and that he was carrying his brother's SKS rifle. Defendant testified that once he and Bivens arrived at the utility building, he put the rifle down. Defendant testified that he did not think that Bivens was actually going to rob or kill the victim.

Defendant testified that the reason he fled the scene and participated in dividing the money and discarding the physical evidence was that he was in shock and fear after the murder. Defendant did not tell the victim's family what had happened because the victim's brother threatened to kill the person responsible for the victim's death, and defendant knew that the last person to work as an informant against the victim had been killed. Defendant also claimed that he told Eason and Cathcart that Bivens had shot the victim.

At sentencing the State presented evidence of defendant's prior conviction for common-law robbery and the testimony of Ronald Greene, the victim of the common-law robbery. Greene testified that defendant and another man had lured him away from a gay bar in Charlotte, taken him out into the country, held a gun on him, and robbed him. Greene claimed defendant was the man who held the gun on him during the robbery. Other evidence was presented indicating that at an earlier date, Greene had said that it was the second man, not defendant, who was holding a gun on Greene.

At sentencing defendant presented evidence that: (i) his father was an alcoholic; (ii) his younger brother, Robert, was killed in a fire that destroyed their family trailer when defendant was six years old; (iii) defendant completed high school and made average grades, even though his intelligence was somewhat below normal; (iv) he participated on both the wrestling and track teams in high school; (v) he was active in his church and in the local Boys Club and had passed every level of Boy Scouts, except Eagle; (vi) he finished Marine boot camp but was later dismissed without an honorable discharge because he left the Marines for a year without permission to be with his dying father; and (vii) he had been married and maintained a good relationship with his former wife's family.

Defendant's evidence also established that he acted as an informant while in Central Prison awaiting trial in this case and that he had testified at the trials of two men who were in prison. Defendant had also helped the police stop another inmate's plot to kill a witness who was intending to testify against the inmate.

The State's rebuttal evidence showed that while employed as a security guard at Eastgate Mall in 1989, defendant had been involved in numerous breaking or enterings and larcenies. The State's evidence further showed that defendant had convinced an assistant manager of a convenience store to get him the keys to the store so that he could rob it. Defendant also had been convicted of trafficking in narcotics. This conviction was the result of defendant stealing drugs from his employer when he was working at Eckerd Drugs. Defendant became a police informant so that he would not have to serve time in prison for the trafficking in narcotics conviction. All of these crimes occurred between 29 September 1989 and 16 January 1990. Defendant pled guilty to these crimes on 14 October 1991. His sentences were suspended, and he received five years' supervised probation and was required to make restitution payments each month.

The jury found the aggravating circumstances that defendant had previously been convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3) (Supp. 1994), and that the murder was committed by defendant while he was engaged in the commission of robbery with a dangerous weapon, N.C.G.S. § 15A-2000(e)(5). The jury found the statutory mitigating circumstances of defendant's age at the time of the crime, N.C.G.S. § 15A-2000(f)(7); that defendant testified truthfully on behalf of the state in prosecution of Michael Dial and Wendell House for the felony

of murder, N.C.G.S. § 15A-2000(f)(8); and the catchall circumstance, N.C.G.S. § 15A-2000(f)(9). The jury also found twenty-eight of forty nonstatutory mitigating circumstances.

## JURY SELECTION

[1] Defendant maintains that he is entitled to a new sentencing hearing because the final question the prosecutor asked prospective jurors concerning the death penalty was improper.

The final question asked was as follows:

> If you found that an aggravating circumstance existed and you found that the aggravating factors outweigh the mitigating factors and you found that the aggravating factors were substantially— were sufficiently substantial to call for the imposition of the death penalty; could you return a sentence of death?

Defendant argues that this description of North Carolina's ultimate sentencing issue is erroneous. The jury must decide, as a final matter, whether the State has proved beyond a reasonable doubt that the aggravating circumstance or circumstances found are "sufficiently substantial to call for the imposition of the death penalty *when considered with the mitigating circumstance or circumstances found.*" *State v. McDougall,* 308 N.C. 1, 33, 301 S.E.2d 308, 327 (emphasis added), *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 173 (1983). Defendant argues that because the prosecutor repeatedly suggested to the jurors that they could decide this final issue without reference to mitigating circumstances, defendant must be granted a new sentencing hearing. We disagree.

Both the State and the defendant have the right to question prospective jurors about their views on the death penalty. *State v. Green,* 336 N.C. 142, 159, 443 S.E.2d 14, 24, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994). The manner and extent of such an inquiry lie within the trial court's discretion. *Id.* "The trial court has broad discretion to see that a competent, fair, and impartial jury is impaneled, and its rulings in that regard will not be reversed absent a showing of an abuse of its discretion." *State v. Conaway,* 339 N.C. 487, 508, 453 S.E.2d 824, 837-38, *reconsideration denied,* 339 N.C. 740, 457 S.E.2d 304 (1995).

Here, the trial court did not abuse its discretion in allowing the prosecutor to ask the final question during jury *voir dire.* The purpose of the question was merely to screen potential jurors' views on

STATE v. BUCKNER

[342 N.C. 198 (1995)]

capital punishment. A reasonable interpretation of the prosecutor's question is whether the juror could impose the death penalty if he or she found that the aggravating circumstances outweighed the mitigating circumstances. This inquiry is permissible. *See State v. Zuniga*, 320 N.C. 233, 250, 357 S.E.2d 898, 910 (holding that it was permissible to ask whether a juror would consider death sentence if juror determined aggravating circumstances outweighed mitigating circumstances), *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987).

Even assuming *arguendo* that the question was improper, any error was cured by the trial court's instructions. *See State v. Anderson*, 322 N.C. 22, 38, 366 S.E.2d 459, 469 (holding that any prejudice resulting from a misstatement of the law by the prosecutor was cured by trial court's proper instruction on applicable law), *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988). The trial court correctly charged the jury in accordance with the North Carolina Pattern Instructions as to the consideration to be given to both aggravating and mitigating evidence in capital sentencing. This assignment of error is overruled.

GUILT-INNOCENCE PHASE

**[2]** Defendant begins by arguing that the trial court committed reversible error by denying defendant the right to argue that the jurors should evaluate the evidence in this case in light of the severity of the potential sentence. During the guilt-innocence closing arguments, defendant argued:

Ladies and Gentleman, I know this is long and I know this is tedious, but my client, and I hope you understand, is facing life in prison. I—in my own heart I feel I've made the point and I think I've made it very clearly, but I don't want to stop and say, "Gee, I should've told you about more." So if you'll just—

The trial court at this point interrupted and said:

Mr.—Mr. Bell [defense counsel], just a moment. Now, Members of the Jury, I want to caution you to recall my instructions to you when we began the jury selection process.

At this stage of this trial the question before you is the guilt or innocence of the defendant as to each of the charges against him. This is not the point where any jury considers what punishment may be imposed.

So, Mr. Bell, in his argument, will no longer refer to what punishments may be imposed. That is not appropriate. You are to disregard that portion of his argument previously made in regard to that.

Can you-all follow those instructions? If you can, please raise your hands.

Defendant argues that these instructions by the trial court were reversible error pursuant to this Court's decision in *State v. Smith*, 335 N.C. 539, 438 S.E.2d 719 (1994). Defendant argues that this restriction violated defendant's constitutional right to effective assistance of counsel and to present his defense. Defendant also argues that this error cannot be deemed harmless because the evidence of guilt in this case was not overwhelming.

N.C.G.S. § 15-176.5 provides that "[w]hen a case will be submitted to a jury on a charge for which the penalty is a sentence of death, either party in its argument to the jury may indicate the consequences of a verdict of guilty of that charge." N.C.G.S. § 84-14 provides in part that "[i]n jury trials the whole case as well of law as of fact may be argued to the jury." We conclude that the trial court erred when it instructed the jury that defendant's argument discussing punishment should be disregarded. This was a violation of defendant's statutory rights under N.C.G.S. § 15-176.5 and N.C.G.S. § 84-14. *See State v. McMorris*, 290 N.C. 286, 225 S.E.2d 553 (1976).

N.C.G.S. § 15A-1443(a) provides in part that

[a] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

Pursuant to N.C.G.S. § 15A-1443(a), we must now determine whether the error at issue was prejudicial to defendant. *See State v. Walters*, 294 N.C. 311, 314, 240 S.E.2d 628, 630 (1978) (holding that the burden of showing error under N.C.G.S. § 84-14 is on defendant); *see also State v. Gardner*, 316 N.C. 605, 613, 342 S.E.2d 872, 877 (1986) (analyzing an error under N.C.G.S. § 84-14, pursuant to N.C.G.S. § 15A-1443(a)).

N.C.G.S. § 15-176.5 provides the State or the defendant with the right "to inform the jury of the consequences of a verdict of guilty [in a capital case]." *State v. McMorris,* 290 N.C. at 289, 225 S.E.2d at 555. N.C.G.S. § 84-14 also "secures to counsel the right to *inform* the jury of the punishment prescribed for the offense for which defendant is being tried." *State v. Walters,* 294 N.C. at 313, 240 S.E.2d at 630. The jury in this case was well aware of the severity of the consequence of its verdict of first-degree murder, as well as the punishments defendant would be facing if he was found guilty of first-degree murder.

In addressing the jury panel prior to the beginning of *voir dire,* the trial court instructed the entire jury panel that defendant had been charged with first-degree murder and that "[t]his is a crime for which the death penalty may be imposed." The trial court also noted that in the sentencing proceeding, it would be determined if defendant would be sentenced to death or life imprisonment. Additionally, during jury selection the jurors were asked by counsel if they were willing "to consider both possible sentences in this case, life imprisonment or death." The *voir dire* thus informed and educated the jury as to the consequence of a verdict of guilty of first-degree murder. Notice to the jury of the consequences is the right protected by N.C.G.S. § 15-176.5 and N.C.G.S. § 84-14.

*State v. Smith,* 335 N.C. 539, 438 S.E.2d 719, relied upon by defendant is distinguishable. In *Smith* the defendant was not only not allowed to argue concerning the sentences he could receive if found guilty of first-degree murder, but he was also restricted in making his argument that he was not guilty. *Id.* at 542, 438 S.E.2d at 721. This Court stated, "We cannot hold that not allowing the defendant's attorney to argue that the defendant was not guilty in combination with the refusal to allow him to argue the severity of the punishment was harmless." *Id.* at 543, 438 S.E.2d at 721.

The determination by this Court that the errors could not be harmless was based on the combination of the two errors. The Court never decided whether the instructions to disregard arguments about punishment, standing alone, were so prejudicial to the defendant as to require that he be granted a new trial.

In the present case, the jury having been repeatedly and specifically told during *voir dire* that the sentence for first-degree murder was either life in prison or death, we conclude no reasonable possibility exists that had the error in question not been committed, a dif-

ferent result would have been reached at trial. Defendant has not shown prejudice, and this assignment of error is overruled.

[3] Next, defendant argues that the trial court erred when it did not allow defendant to repeat specific trial testimony of one witness during closing arguments in the guilt-innocence phase. Defendant argues his right to argue his entire case to the jury was improperly limited in violation of N.C.G.S. § 84-14 and N.C.G.S. § 15A-1230(a).

During the trial Iris Bolin testified about a conversation between Bivens and Joyce Haas in July 1991. During this conversation Haas talked about robbing and killing Eddie Dow, the victim in this case. Specifically, Bolin testified that Bivens had come over to Haas' home and told Haas that he had gotten a job with Dow. Haas told Bivens to get in good with Dow; Bivens responded that it would take some time before Dow would trust him. Then Haas related a plan to Bivens which involved robbing and killing Dow and splitting the money with Haas. Bolin also testified that Bivens did not respond to these statements by Haas and that three other people, in addition to herself and Bivens, were present during the conversation.

During closing argument defendant stated that there were some things he wanted the prosecutor to address in his closing argument to the jury. The first thing that defendant asked the prosecutor to address was Bivens' testimony that he had first heard about the plan to rob Dow at the mall on the day of the murder. Defendant then argued:

Never talked about it with Joyce—with Mamma Haas and the Strawberry Gang; that's what Jamie Bivens said. He said, "Oh, no; I heard it being talked about, but no, I didn't have anything to do with it." Wrong. Iris Bolin came in here and told you—

The prosecutor objected to the statement, saying "[t]hat was for impeachment purposes"; and the trial court sustained the objection and instructed the jury "that you're to remember the evidence; you'll remember the instructions the Court has—may have given. It is for you to determine, from all the evidence, what the facts are. And the attorneys are allowed wide latitude in their arguments, but remember, this is argument and not evidence." Defendant's counsel continued his closing argument by stating: "You heard Iris Bolin describe the conversation. Match her description with what Jamie Bivens said and let Mr. Lands [the prosecutor] resolve that discrepancy beyond a reasonable doubt."

"Counsel is given wide latitude to argue the facts and all reasonable inferences which may be drawn therefrom." *State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977). N.C.G.S. § 15A-1230(a) provides in part that "[a]n attorney may, . . . on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue." N.C.G.S. § 84-14 allows counsel to argue the facts and law of the case.

In this case defendant was attempting to set forth the testimony of Iris Bolin in order to illustrate how that testimony contradicted and thus impeached Bivens' testimony. The testimony had been submitted for this very reason, and defendant should have been permitted to continue with his argument. *See State v. Bondurant*, 309 N.C. 674, 688, 309 S.E.2d 170, 179 (1983) (holding that it is proper to refer to evidence of prior acts of misconduct in the closing arguments on the issue of credibility, but it is improper to argue about misdeeds for any purpose other than impeachment because the acts were submitted for impeachment purposes only); *State v. Wall*, 304 N.C. 609, 618, 286 S.E.2d 68, 74 (1982) (determining whether a trial court erred in not declaring a mistrial when evidence submitted for impeachment purpose was used substantively in closing, indicating that evidence that is admitted for impeachment can be referred to for that purpose only in closing).

We turn now to the question of whether the ruling constituted prejudicial error. "Under N.C.G.S. § 15A-1443(a) the test for prejudicial error in matters not affecting constitutional rights is whether 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *State v. Gardner*, 316 N.C. at 613, 342 S.E.2d at 877. The burden of showing prejudice pursuant to N.C.G.S. § 15A-1443(a) is on defendant.

We conclude that defendant has not shown that there is a reasonable possibility that had the error in question not been committed, a different result would have been reached at trial. First, defendant was able to argue that there were discrepancies between the testimony of Iris Bolin and Jamie Bivens. The alleged conversation between Haas and Bivens had been presented in detail to the jury during the trial, and Bolin had testified that five people were present and Bivens had not responded when Haas mentioned robbing and killing Dow. The jury was specifically instructed by the trial court to remember the evidence.

Second, the value of this particular impeachment testimony was slight when considered with other evidence presented to the jury. The evidence presented at trial established that defendant went with Bivens to the victim's home on the night of the murder. Defendant admitted that he was with Bivens but testified that he only went with Bivens to get evidence that could be used by the police against the victim. Defendant also admitted that on the night of the murder, he was carrying the murder weapon, which belonged to defendant's brother, and that he took the weapon when he and Bivens exited the Jeep. The evidence also showed that on the night of the murder, defendant was wearing gloves, while Bivens had socks on his hands.

The significant contested issues were whether defendant had the intent to help Bivens rob and murder the victim, if in fact Bivens killed the victim, or whether defendant killed the victim. Bolin's testimony that Bivens heard someone besides defendant talking about robbing and murdering the victim months before the murder is of little value in determining these issues. This evidence does not bear in any way on what defendant's intent was on the night of the murder; nor does it suggest that Bivens had any intent to kill the victim, as he was simply listening to someone else and did not respond in any way to the comments.

Of much greater significance was Samantha Cobb's testimony that she had heard Bivens and Eason discuss robbing and killing the victim just weeks before the murder. Defendant was allowed to argue, without objection, about Cobb's testimony and how it contradicted Bivens' testimony. Defendant was also given ample opportunity to argue how the testimony of other witnesses, interested and uninterested, impeached Bivens' testimony.

Defendant was convicted of the crime of first-degree murder; unquestionably, defendant was at the scene of the crime with Bivens when the victim was killed. The jury was instructed that it could find defendant guilty of first-degree murder on the basis of aiding and abetting or acting in concert or on the basis that defendant actually pulled the trigger. We conclude that on the evidence in this record, defendant cannot show that there is a reasonable possibility that had defendant been allowed to argue in his closing about the specific testimony of Iris Bolin, a different result would have been reached at trial.

[4] Defendant also asks us to consider the alleged errors in this issue and the previous issue together and conclude that the combination of

the two errors requires that defendant be granted a new trial. Having considered this argument, we still conclude defendant has not established that a reasonable possibility exists that had the errors not been made, a different result would have been reached at trial. Our review of the evidence discloses that the two arguments at issue would have had a very limited effect on the ultimate decision of the jury in this case. The jury was fully aware of the consequences of its decision at the guilt-innocence phase and had also been fully exposed to the evidence that would have impeached defendant during trial. Therefore, defendant's assignment of error is overruled.

**[5]** Next, defendant argues that the prosecutor's flagrant and repetitive closing argument asking the jurors to penalize defendant for exercising his constitutional rights entitles defendant to a new trial.

At trial defendant testified that a few days after the murder, he went to the police station and was put into a room by himself. At the station defendant fell asleep; he awoke when police officers came in and told him that Bivens had claimed that defendant killed the victim. Defendant said that he had not shot anybody and that he would be willing to make a statement but wanted Locke Bell, his attorney, to be present. The police did not ask any more questions but also did not contact defendant's attorney. Defendant was eventually arrested. During closing argument the prosecutor repeatedly noted that defendant did not make a statement to the police; that he would not talk to the police; that he never told the police that Bivens had shot the victim; and that he had not helped the police gather evidence as Bivens had. Defendant did not object to these arguments at trial.

After the prosecutor finished his closing argument, the trial court, *sua sponte*, instructed the jury:

> Now, before I begin my instructions to you, there's one point I need to take up with you. Before luncheon recess, the District Attorney had made some argument in regard to the defendant not making a statement to officers after the defendant was arrested.

> Now, it is your duty to remember and recall all of the evidence. I tell you that a person under arrest has a right to request that an attorney be present in such a situation. So you should disregard the argument about the defendant's failure to make a statement at such a time and place.

> Can all of you follow this instruction? If you can, please raise your hands.

Defendant concedes that the prosecution could cross-examine defendant about his silence. However, defendant argues that the prosecutor's arguments during closing violated defendant's rights to due process of law and to be protected against self-incrimination. Defendant also argues that the flagrancy of the violations amounts to gross impropriety and that the trial judge's belated instruction could not cure the prejudice that resulted.

Where there is no objection to the closing argument in a capital case, an appellate court will review the argument;

> "but the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it."

*State v. Brown*, 320 N.C. 179, 194-95, 358 S.E.2d 1, 13 (quoting *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)), *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). We conclude that the prosecutor's closing arguments at issue in this case were made to emphasize impeaching testimony at trial and that the arguments did not impermissibly violate defendant's constitutional right to remain silent.

We begin our analysis by noting that there is no evidence that defendant had been read his *Miranda* rights at the time of the silence and inaction referred to by the prosecutor during his closing argument.

> The United States Supreme Court held in *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91 (1976), that when a person under arrest has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), which includes the right to remain silent, there is an implicit promise that the silence will not be used against that person. The Court in *Doyle* held it is a violation of a defendant's rights under the Fourteenth Amendment to the Constitution of the United States to then impeach the defendant on cross-examination by questioning him about the silence.

*State v. Hoyle*, 325 N.C. 232, 236, 382 S.E.2d 752, 754 (1989).

However, the United States Supreme Court has also held that in certain situations, a defendant's silence can be used to impeach a defendant without violating a defendant's constitutional rights. In

*Jenkins v. Anderson*, 447 U.S. 231, 65 L. Ed. 2d 86 (1980), the Court held that a prosecutor could cross-examine the defendant about his failure for thirty days prior to his arrest to tell anyone he was acting in self-defense on the night of the murder and that the prosecutor could mention this failure in his closing argument. In *Jenkins* the Court held that defendant's Fifth Amendment rights were not violated by the use of his prearrest silence. *Id.* at 238, 65 L. Ed. 2d at 95. In *Fletcher v. Weir*, 455 U.S. 603, 71 L. Ed. 2d 490 (1982) (per curiam), the Court held:

> In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

*Id.* at 607, 71 L. Ed. 2d at 494. The Court also noted in *Fletcher* that the

> "[c]ommon law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative."

*Id.* at 606, 71 L. Ed. 2d at 493-94 (quoting *Jenkins*, 447 U.S. at 239, 65 L. Ed. 2d at 95) (citation omitted).

As there is no evidence in this case that defendant had been read his *Miranda* rights at the time of the silence and inaction referred to by the prosecutor during his closing argument, we will now consider whether the arguments made by the prosecutor were permissible as impeachment of defendant's testimony at trial.

This Court has addressed the issue of allowing the prosecutor to use evidence of defendant's silence to impeach the defendant during cross-examination in *State v. Lane*, 301 N.C. 382, 271 S.E.2d 273 (1980), and *State v. Foddrell*, 291 N.C. 546, 231 S.E.2d 618 (1977). In

*Foddrell* this Court held that it was permissible for a prosecutor to cross-examine a defendant about his prearrest silence, as the "evidence was competent to impeach his testimony at the trial and it was offered for no other purpose." *Foddrell*, 291 N.C. at 558, 231 S.E.2d at 626. In *Lane* the defendant testified at trial that he had an alibi for the crime for which he was being tried. The State asked defendant on cross-examination why he had not told the police or the prosecutor about this alibi prior to trial. This Court, in determining whether the cross-examination was permissible, noted:

> "Prior statements of a witness which are inconsistent with his present testimony are not admissible as substantive evidence because of their hearsay nature. Even so, such prior inconsistent statements are admissible for the purpose of impeachment. . . .
>
> '. . . [I]f the former statement fails to mention a material circumstance presently testified to, *which it would have been natural to mention in the prior statement,* the prior statement is sufficiently inconsistent,' . . . . [Citations omitted.] [Emphasis added.]"

*Lane*, 301 N.C. at 386, 271 S.E.2d at 276 (quoting *State v. Mack*, 282 N.C. 334, 339-40, 193 S.E.2d 71, 75 (1972)) (citations omitted) (alterations in original). The Court went on to hold in *Lane* that "[t]he crux of this case is whether it would have been natural for defendant to have mentioned his alibi defense at the time he voluntarily stated [to the police] that he 'did not sell heroin to this person.' " *Id.*

The question now before this Court is whether in light of defendant's testimony at trial, defendant's silence about Bivens' guilt amounts to an inconsistent statement that the prosecutor could argue in closing. We conclude that defendant's silence about Bivens' guilt, prior to taking the stand, was evidence of an inconsistent statement in this particular case; and it was not error for the prosecutor to make the arguments impeaching defendant's testimony at trial.

In the instant case defendant's entire defense was based on the fact that he was a police informant and was at the scene of the crime attempting to gather incriminating evidence against the victim. At trial defendant testified about his activities as a police informant and how he gathered information about criminal activities and then passed that information on to the police. Defendant also named some of the people whom he had gathered evidence against and set up for the police. Defendant also testified that the police had specifically

asked him to gather evidence about the victim. Defendant presented evidence tending to show that he continued to gather evidence of the criminal activity of others and to pass that information on to the police even while he was in jail awaiting trial.

Under these specific facts, we conclude that it would have been natural for defendant to have told the police that Bivens shot the victim and to have helped the police gather evidence in the case even before defendant was brought to the police station. Evidence that defendant did not do so contradicted defendant's testimony that he was acting as a police informant on the night of the murder and was at the crime scene simply to gather incriminating evidence against the victim. Additionally, we conclude that when confronted with Bivens' statement identifying defendant as the triggerman, it would have been natural for defendant not only to tell the police, "I didn't shoot anyone," but also to tell the police that Bivens shot the victim.

Defendant also argues that even if the prosecutor could have mentioned defendant's silence during his closing argument in order to impeach defendant's testimony at trial, the prosecutor's arguments were still erroneous in that he used defendant's reliance on his constitutional rights as substantive evidence of defendant's guilt. We conclude that in the limited circumstances presented by this particular case, the prosecutor's closing argument on defendant's failure to talk to police was made to impeach defendant's testimony at trial. The prosecutor raised the question during closing argument that if in fact Bivens shot the victim, as defendant alleged at trial, why did defendant not say so when he was talking to the police, and why did defendant not help in the gathering of evidence in this particular case. Such arguments impeached defendant's testimony at trial that on the night of the murder, he was at the victim's home simply to gather evidence to be used against the victim.

Based on defendant's testimony at trial, the natural tendency would be for defendant to have mentioned Bivens' guilt at some point prior to defendant's taking the stand. On the particular facts of this case, the trial court did not err in allowing the prosecutor during his closing argument to make reference to defendant's silence since the fact that defendant remained silent as to Bivens' guilt impeached the value of defendant's testimony at trial. Defendant's assignment of error is overruled.

[6] Defendant next contends the trial court erred in instructing the jury on aiding and abetting. Specifically, defendant argues that the

trial court failed to instruct that a defendant cannot be guilty as an aider and abettor unless the defendant had the requisite *mens rea* for conviction of the crime charged.

The trial court gave the following general instructions on the theory of aiding and abetting:

> A person who aids and abets another to commit a crime is guilty of that crime. You must clearly understand that if he does aid and abet, he is guilty of the crime just as if he had personally done all of the acts necessary to constitute the crime.

> Now, I charge that for you to find the defendant guilty of robbery with a dangerous weapon or murder in the first-degree or murder in the second-degree or felonious larceny or any one of those charges because of aiding and abetting, the State must prove three things beyond a reasonable doubt.

> First, that the crime was committed by some other persons, second, that the defendant knowingly advised, instigated, encouraged, procured or aided the other persons to commit that crime. However, a person is not guilty of a crime merely because he is present at the scene, even though he may silently approve of the crime or secretly intend to assist in its commission. To be guilty, he must aid or actively encourage the person committing the crime or in some way communicate to this person his intention to assist in its commission. And, third, that the defendant's actions or statements caused or contributed to the commission of the crime by that other person.

> So I charge that if you find from the evidence beyond a reasonable doubt that on or about February 19th, 1992, some person or persons other than the defendant committed the crimes of robbery with a dangerous weapon or murder in the first-degree or murder in the second-degree or felonious larceny or any of these, and that the defendant knowingly advised, instigated, encouraged, procured or aided the other person or persons to commit the crime and that in so doing the defendant's actions or statements caused or contributed to the commission of the crime by the other person, it would be your duty to return a verdict of guilty of that crime.

> However, if you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict

based on aiding and abetting, a verdict of guilty based upon aiding or abetting.

The trial court did not repeat these instructions during the charges for robbery with a dangerous weapon, first-degree murder, and felonious larceny. Instead, the trial court mentioned that it had already charged the jury on aiding and abetting and that the jury could consider the earlier instructions in regard to each specific crime charged. Defendant did not object to the aiding and abetting instructions. The instructions were repeated at the jury's request after deliberations had begun. Defendant objected to the reinstruction but not to the specific language used in the instructions.

Defendant having failed to object to the content of the instructions at trial, we review for plain error. To find plain error, "the error in the trial court's jury instructions must be 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.'" *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)).

Defendant argues that the aiding and abetting instructions constitute error in that they do not require the jury to find that defendant himself had the requisite mental state for conviction of the crimes charged. Defendant also argues that by telling the jurors that they only had to find that defendant "knowingly advised, instigated, encouraged, procured or aided the other person or persons to commit that crime," the trial court not only misinformed the jurors as to what *mens rea* they had to find, it also completely nullified defendant's primary defense. We disagree.

Our recent opinion in *State v. Allen*, 339 N.C. 545, 453 S.E.2d 150 (1995), establishes that the aiding and abetting instructions in this case did not constitute plain error. In *Allen* the defendant argued that the trial court committed plain error in its instructions on aiding and abetting because the instructions did not require the jury to find that defendant premeditated and deliberated or that he shared a criminal purpose or intent with codefendant to kill the victim. The Court held the instructions did not rise to the level of plain error because they included the phrase "knowingly aided," which has the probable interpretation of requiring a jury "to determine that defendant knowingly participated in the crime based on an intent to assist [another] in committing it." *Id.* at 558, 453 S.E.2d at 158.

Here, the trial court used the phrase "knowingly advised, instigated, encouraged, procured or aided the other person or persons to commit the crime." The court further instructed that to be guilty, defendant "must aid or actively encourage the person committing the crime or in some way communicate to this person his *intention* to assist in its commission." (Emphasis added.) We conclude these instructions clearly. convey that for the jury to find defendant guilty under the theory of aiding and abetting, defendant had to have knowingly participated in the murder based on an intent to assist Bivens in committing the crimes for which defendant was charged. The instructions were not erroneous, and defendant's assignment of error is overruled.

**[7]** Defendant next contends that the trial court erred in conducting proceedings outside defendant's presence and that this conduct violated defendant's Sixth, Fifth, and Fourteenth Amendment rights under the United States Constitution and his rights under Article I, Section 23 of the North Carolina Constitution. Defendant points to five particular instances where he contends that he was not present and should have been: (i) at a pretrial conference; (ii) at an in-chambers conference; (iii) at a discussion with counsel prior to the beginning of court one day; (iv) at a discussion with counsel concerning the jury form and jury deliberations during sentencing; and (v) at the time when the court clarified that the noncapital sentences, which had been imposed in defendant's presence, were to run consecutively.

At the outset we note that under the federal Constitution, in addition to his right to be present under the Confrontation Clause, a defendant has a due process right to be present even in situations where he is not presenting evidence or confronting witnesses when it can be said that the defendant's presence " 'has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . [and] to the extent that a fair and just hearing would be thwarted by his absence.' " *United States v. Gagnon*, 470 U.S. 522, 526, 84 L. Ed. 2d 486, 490 (1985) (per curiam) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 108, 78 L. Ed. 674, 678-79 (1934)). Further, as defendant correctly notes, under our State Constitution a defendant has the right to be present at every stage of his trial; and if a defendant is being tried for a capital felony, that right cannot be waived. *State v. Huff*, 325 N.C. 1, 29, 381 S.E.2d 635, 651 (1989), *sentence vacated*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990), *on remand*, 328 N.C. 532, 402 S.E.2d 577 (1991). Not every error caused by a defend-

ant's absence requires reversal as these errors are subject to a harmless-error analysis. *Id.* at 33, 381 S.E.2d at 653.

To begin, we consider the instance when defendant was not present for the pretrial conference. On 7 September 1993 the trial court noted for the record that on 3 September 1993 a conference was held at which defendant was not present although his attorneys were. According to the trial court, at the conference the court discussed the plans for the trial's daily schedule; the basics of publicity; security in the courtroom; the jury selection procedure, which had previously been discussed; and the availability of a jury questionnaire. There was also a brief, nonbinding review of pending motions and a discussion of the possibility of a motion to continue. After the trial court recorded what had been discussed at the pretrial hearing, defendant argued his motion to continue, which was denied.

This case was called for trial on 7 September 1993. We conclude that since the conference at issue took place on 3 September 1993, prior to the commencement of defendant's trial, no error, constitutional or otherwise, was committed. *See State v. Rannels*, 333 N.C. 644, 652, 430 S.E.2d 254, 258 (1993) (holding that it was not error to have private, unrecorded sidebar conferences with potential jurors where conferences took place before calendar for session was called and before oath administered to jury); *State v. Cole*, 331 N.C. 272, 275, 415 S.E.2d 716, 717 (1992) (holding that defendant's constitutional right to be present at all stages of his trial does not arise before the trial begins); *see also State v. Chapman*, 342 N.C. 330, 464 S.E.2d 661 (1995).

Our review of the other four instances where defendant contends his absence violated his constitutional rights reveals that any violation of his rights was harmless beyond a reasonable doubt. In the first instance the trial court conducted an in-chambers meeting in defendant's absence during which a tape of a conversation between the victim and another person was played. The trial court noted for the record, after receiving defense counsel's permission to do so outside the presence of defendant, that the court had listened to the tape, that no motions as to the tape were to be heard at that time, and that no rulings were made as to the tapes either in chambers or in court. From the record as to the substance of the in-chambers conference it is clear that all that occurred during the conference was that the trial court listened to one tape. The trial court's decision as to the admissibility of that tape and two others occurred later and in defendant's presence.

STATE v. BUCKNER

[342 N.C. 198 (1995)]

In the second instance defendant argues that the trial court erred when it took care of housekeeping matters outside defendant's presence while the court waited for a juror who was late. The transcript reveals that on 24 September 1993, a juror overslept. Prior to bringing defendant into the courtroom, the court determined which juror was missing and had someone call the juror. The court then asked if counsel foresaw a need to have any *voir dire* on any matters before the testimony that had been interrupted by the evening recess was resumed. When counsel began to get into a discussion about a *voir dire* on the admissibility of certain tape recordings and the order of testimony, the trial court stopped the discussion and said that it would be necessary to bring defendant into the courtroom before the court went any further. After defendant entered the courtroom, the trial court began the conversation anew, asking defendant what motions *in limine* he was considering and specifically asking defendant to address the motion as to the admissibility of the tapes.

Next, defendant argues that it was error for the trial court to ask in the absence of defendant if the jurors were all back from a jury break and to hand the bailiff the jury form to give to the jurors when they had all returned. At this point the court also told counsel to start considering when the court should reconvene if the jury did not reach a decision as to defendant's sentence on that day. No further discussion of this issue occurred between counsel and the trial court because the jury reached a decision as to defendant's sentence, and judgment was entered by the trial court that same day.

Finally, defendant argues that the trial court erred by ordering, outside defendant's presence, that the sentences for the noncapital matters would run consecutively. When the sentences for the capital and noncapital offenses were imposed, the trial court did not indicate that the sentences would run consecutively. Upon request of the prosecutor, defense counsel was brought back into the courtroom; and the trial court noted for the record that the court intended that the sentences run consecutive to each other. The trial court asked if defense counsel had any problem with defendant not being present at this portion of the proceedings. Defense counsel indicated that he did not think it was necessary to have defendant present. The sentences as to the noncapital felonies had already been imposed; no evidence was presented during the time defendant was absent nor was any argument made beyond the State's request that the sentences run consecutively to which defense counsel interposed an objection.

STATE v. BUCKNER

[342 N.C. 198 (1995)]

Assuming *arguendo* that defendant's federal and state constitutional rights were implicated in any of these situations, we conclude that any error was harmless beyond a reasonable doubt.

> Where " 'the transcript reveals the substance of the [*ex parte*] conversations, or the substance is adequately reconstructed by the trial judge at trial,' " *State v. Adams*, 335 N.C. 401, 409, 439 S.E.2d 760, 763 (1994) (quoting *State v. Boyd*, 332 N.C. 101, 106, 418 S.E.2d 471, 474 (1992)), and it is manifest from the transcript that defendant was not harmed because his presence would have made no difference in the outcome of the conversation, the error has been held harmless beyond a reasonable doubt. *State v. Payne*, 328 N.C. 377, 389, 402 S.E.2d 582, 589 (1991).

*State v. Williams*, 339 N.C. 1, 29, 452 S.E.2d 245, 262 (1994), *cert. denied*, —— U.S ——, 133 L. Ed. 2d 61 (1995).

In *State v. Huff*, 325 N.C. 1, 27-28, 381 S.E.2d 635, 650, the defendant became emotionally distraught during the introduction of certain testimony and was removed from the courtroom. Upon request of defense counsel, the trial court continued the proceeding in defendant's absence. When discussing *Huff*, this Court has noted that

> the error of continuing the trial in defendant's absence was harmless because defense counsel was present and able to challenge the evidence being offered and the [c]ourt had a full record from which to review its admissibility. Further, there was no showing that, given his condition, defendant himself could have aided in defending against the witnesses' testimony.

*State v. Buchanan*, 330 N.C. 202, 220-21, 410 S.E.2d 832, 843 (citing *Huff*, 325 N.C. at 35-36, 381 S.E.2d at 655).

In this case in all five instances at least one of defendant's counsel was present and representing defendant's interests. Additionally, a record was made of everything that occurred outside defendant's presence. The record shows that defendant's presence would have made no difference in the outcome of any of the conversations. Finally, with regard to the clarification that the noncapital sentences would run consecutively, we note that as in *Huff*, at the time of the trial court's decision, defendant was emotionally distraught. Defendant had just been sentenced to death; and his counsel told the court, "I don't think he's [defendant's] in any shape to even really know what's going on in here right now." Defendant's absence during the five particular situations challenged by defendant "beyond a rea-

sonable doubt . . . did not contribute to the verdict obtained[,]" *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710 (1967); and, thus, any error was harmless. *Huff*, 325 N.C. at 33, 381 S.E.2d at 653-54. This assignment of error is overruled.

[8] Next, defendant argues that the trial court committed plain error by refusing to grant the jury's request to rehear the testimony of defendant; Bivens; and SBI Special Agent Trochum, the forensic firearms and tool mark examiner who examined the rifle used to kill the victim.

After beginning jury deliberations at the guilt-innocence phase, the jurors sent out a note asking to be allowed to see various items of evidence and to review the testimony of defendant, Bivens, and Trochum. The trial court informed counsel, in the absence of the jury, that "in my discretion and it's a practical matter, I will not order the preparation of transcripts of portions of the evidence, and I will try to instruct the jury in regard to that." When the jury was brought into the courtroom, the court instructed:

> Now, Members of the Jury, in regard to the items you've mentioned as Agent Trochum's testimony and the testimony of Mr. Buckner [defendant] and Mr. Bivens, it is not possible to give you a transcribed version of testimony of any portion of the trial—of this trial's testimony. That is not feasible.

Defendant did not object to the failure of the judge to submit this testimony to the jury. The trial court did grant the initial portion of the jury's request to review multiple pieces of evidence in the jury room.

N.C.G.S. § 15A-1233(a) provides in part:

> If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury.

If the judge denies the jury's request to review evidence or testimony

> upon the ground that the court has no power to grant the motion in its discretion, the ruling is reviewable. In addition, there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented.

*State v. Lang,* 301 N.C. 508, 510, 272 S.E.2d 123, 124-25 (1980) (citation omitted).

In *State v. Lewis,* 321 N.C. 42, 361 S.E.2d 728 (1987), the jurors asked if they were allowed to review evidence that had been presented in the case, either transcripts or pictures. After conferring with trial counsel, the judge told jurors that they could examine photographs but not the transcript because " 'I just don't think that's the way to do things.' " *Id.* at 51, 361 S.E.2d at 734. This Court held that it appeared that the trial judge in denying the jury's request for transcripts exercised his discretion because he considered the request of the jury and allowed it in part and denied it in part. *Id.*

In *State v. Lee,* 335 N.C. 244, 439 S.E.2d 547, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 162, *reh'g denied,* —— U.S. ——, 130 L. Ed. 2d 532 (1994), the Court held that it was not error to deny a jury's request to review the testimony of two particular witnesses when "[i]t is clear from this record that the trial court was aware of its authority to exercise its discretion and allow the jury to review the expert's testimony." *Id.* at 290, 439 S.E.2d at 571.

In this case the trial judge specifically stated that he was denying the jury's request to review the testimony "in his discretion." It is clear that the judge was aware of his discretionary authority pursuant to the statute. Further indication that he realized that it was within his discretion to grant or deny the jury's request is evident from the fact that he granted a portion of the jury's request, the request to review physical evidence in the jury room. *Lewis,* 321 N.C. at 51, 361 S.E.2d at 734.

Defendant argues that the trial court erred because it could have had the testimony read to the jury by the court reporter. Defendant states in his brief, "Thus, to the extent that the trial court was purporting to exercise its discretion, it was doing so under a misapprehension of the limits of that discretion."

We disagree with defendant's interpretation of the trial court's comments. The court never addressed the question of whether the court reporter could read back the testimony to the jury, but this specific request was never actually made by the jury. Nothing in the record indicates the trial judge was acting under a misapprehension of the limits of his discretion when he made his decision. The trial judge, in his discretion, denied the jury's request because it was not practical or feasible. The testimony of these three witnesses covered

over five hundred transcript pages; defendant's testimony alone spanned three days. To have the court reporter read the testimony back to the jury was no more feasible or practical than to have the testimony transcribed and the transcript submitted to the jury.

We conclude that the trial judge acted within his discretion and with the understanding that the decision as to the jury's request was fully within his discretion when he denied the jury's request to review the testimony of Trochum, Bivens, and defendant. No evidence supports defendant's argument that the trial judge was acting under a misapprehension of the limits of his discretion. Defendant's assignment of error is without merit.

[9] Defendant also contends the trial court erred by failing to dismiss or arrest judgment on the felonious larceny conviction. Defendant argues that larceny is a lesser included offense of robbery with a dangerous weapon. *See State v. White*, 322 N.C. 506, 369 S.E.2d 813 (1988). Defendant further argues that since the larceny in the present case was part of the same continuous transaction as the robbery with a dangerous weapon, the trial court violated defendant's federal and state constitutional rights to be free of double jeopardy by convicting him for both crimes. We agree; and based on the authority of *State v. Jaynes*, 342 N.C. 249, 464 S.E.2d 448 (1995), we arrest judgment on the felonious larceny conviction.

SENTENCING PROCEEDING

[10] Next, defendant argues that the trial court committed reversible error when it submitted the statutory mitigating circumstance that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1). Defendant notes that he strenuously objected to the submission of this circumstance and that no rational juror could have found that defendant's criminal record was not significant.

"[T]his Court has held that where evidence is presented in a capital sentencing proceeding that may support a statutory mitigating circumstance, N.C.G.S. § 15A-2000(b) directs that the circumstance must be submitted for the jury's consideration absent defendant's request or even over his objection." *State v. Ingle*, 336 N.C. 617, 642, 445 S.E.2d 880, 893 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 222 (1995).

A review of the record reveals that defendant's criminal record consisted principally of a series of crimes which all occurred between

29 September 1989 and 16 January 1990. These crimes included seven breaking or entering convictions, a common-law robbery conviction, and a drug trafficking conviction. There was also some evidence that colleagues of defendant believed he was violent and that defendant carried a firearm after he had been convicted of a felony, which in itself is a felony. The only violent criminal activity by defendant that was addressed in any detail at trial related to defendant's conviction for common-law robbery. However, the evidence showed that in the common-law robbery case, evidence was presented that defendant's coconspirator, not defendant, was the instigator or main actor in the crime. The evidence also shows that on 14 October 1991, defendant pled guilty to the seven breaking or enterings, the common-law robbery, and the trafficking charge. The superior court in sentencing defendant placed defendant on probation and entered a fifteen-year suspended sentence.

In *State v. Lloyd*, 321 N.C. 301, 364 S.E.2d 316, *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18, *on remand*, 323 N.C. 622, 374 S.E.2d 277 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand*, 329 N.C. 662, 407 S.E.2d 218 (1991), this Court held the trial court correctly submitted the (f)(1) mitigating circumstance even though there was evidence defendant had been convicted of two felonies and seven alcohol-related misdemeanors. *Id.* at 313, 364 S.E.2d at 324.

In this case defendant's felony convictions were closer in time to the crimes for which he was being tried than were the felony convictions in *Lloyd*. However, based on the evidence presented in this case, a rational juror could conclude that defendant did not have a significant history of prior criminal activity at the time of the murder. All of defendant's charged criminal activity occurred within a brief period of time; most of the criminal activity was nonviolent; and defendant received probation and a suspended sentence for his prior convictions. Defendant's assignment of error is overruled.

[11] Next, defendant argues that the trial court committed reversible error when it refused, as a matter of law, to peremptorily instruct the jury on those nonstatutory mitigating circumstances supported by uncontroverted evidence. In his brief defendant argues that every nonstatutory mitigating circumstance was deserving of a peremptory instruction and that the judge erred in failing to instruct peremptorily as to the nonstatutory mitigating circumstances because the trial judge was acting under the misapprehension that a peremptory

STATE v. BUCKNER

[342 N.C. 198 (1995)]

instruction for nonstatutory mitigating circumstances was not permissible.

If the evidence supporting a nonstatutory mitigating circumstance is uncontroverted and manifestly credible, the defendant is entitled to a peremptory instruction on that circumstance upon his request. *State v. Green,* 336 N.C. 142, 173-74, 443 S.E.2d 14, 32-33, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994). However, a defendant must specify the particular mitigating circumstance that he deems deserving of a peremptory instruction. *State v. Skipper,* 337 N.C. 1, 41, 446 S.E.2d 252, 274 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 895 (1995). The trial judge is not "required to determine on his own which mitigating circumstance is deserving of a peremptory instruction in defendant's favor." *State v. Johnson,* 298 N.C. 47, 77, 257 S.E.2d 597, 618-19 (1979). Further, the peremptory instruction for statutory mitigating circumstances is not appropriate for nonstatutory mitigating circumstances. *Green,* 336 N.C. at 173, 443 S.E.2d at 32. While the jury must accord mitigating value to a statutory mitigating circumstance found by it, the jury may deem a nonstatutory mitigating circumstance found by it to be without mitigating value. *Id.* at 173-74, 443 S.E.2d at 32-33. A peremptory instruction for nonstatutory mitigating circumstances should reflect this distinction between nonstatutory and statutory mitigating circumstances. *Id.* at 174, 443 S.E.2d at 33.

In the present case defendant first noted that he would be asking for a peremptory instruction for "a number" of the circumstances; later, defendant argued that defendant "deserves a p[er]emptory instruction on each one of those mitigating factors there . . . and if the Court wants me to address these specifically, I will be more than happy to." The trial court responded that it did in fact want defendant to specifically address each circumstance. Defendant then proceeded to go through the mitigating circumstances, the facts that supported the circumstances, and why the nonstatutory circumstances could be deemed to have mitigating value. However, the only circumstance for which defendant specifically requested a peremptory instruction was that defendant was a hard worker.

Later, when the trial court was going over the mitigating circumstances it would submit to the jury, defendant did not ask for a peremptory instruction for any of the circumstances. The Court eventually addressed the question of peremptory instructions one more time; and defendant argued that where all the evidence tends to show

that a particular mitigating circumstance exists, the defendant is entitled to a peremptory instruction and that there is no distinction between statutory and nonstatutory mitigating circumstances.

The trial court then indicated that it was considering giving a peremptory instruction for some of the statutory mitigating circumstances. The trial court noted that statutory mitigating circumstances are deemed mitigating as a matter of law and stated that a peremptory instruction is appropriate if there is no evidence to the contrary. The trial court stated it would not give such an instruction for nonstatutory circumstances. Defendant then requested a peremptory instruction as to one of the statutory mitigating circumstances but did not mention any of the nonstatutory mitigating circumstances. Defendant never distinguished between a peremptory instruction for statutory and nonstatutory mitigating circumstances; indeed, in his arguments during the charge conference, he indicated he saw no difference between the statutory and nonstatutory mitigating circumstances. Earlier, defendant had argued that even the nonstatutory mitigating circumstances were actually statutory, as they fell under the catchall circumstance, N.C.G.S. § 15A-2000(f)(9).

Defendant was not entitled to a peremptory instruction for any circumstances except the ones he specifically discussed with the trial court. *See Skipper*, 337 N.C. at 41, 446 S.E.2d at 274. The only nonstatutory mitigating circumstance for which defendant specifically requested that a peremptory instruction be given was that defendant was a hard worker. We conclude that the evidence as to this circumstance could not be deemed uncontradicted and manifestly credible because there was evidence defendant stole from two of his employers and stopped working for another employer after being involved in a fight at work. Additionally, the trial court correctly determined that it should not give the same peremptory instruction for nonstatutory and statutory mitigating circumstances. *Green*, 336 N.C. at 173, 443 S.E.2d at 32.

On appeal defendant argues that the trial court should have given peremptory instructions for all forty nonstatutory mitigating circumstances. We conclude that since defendant did not specifically request that peremptory instructions be given as to all nonstatutory mitigating circumstances, the trial court did not err by not giving such an instruction. *Skipper*, 337 N.C. at 41, 446 S.E.2d at 274. Additionally, we conclude that the trial court did not err by not giving a peremptory instruction as to the nonstatutory mitigating circumstances because

defense counsel never requested a proper peremptory instruction for nonstatutory mitigating circumstances. Defendant's assignment of error is overruled.

[12] Defendant next argues that the trial court improperly interfered with defendant's case in mitigation by overruling defendant's objection to prosecutorial arguments which mischaracterized the role of mitigating circumstances and by limiting defendant's argument about mitigating circumstances.

First, defendant argues that the trial court erred by overruling defendant's objection to the following two arguments by the prosecutor: (i) "Mitigating circumstances. What you're looking for is some reason to explain why George Cale Buckner on February 19, 1992, was standing outside Eddie Dow's home . . . . What you're looking for is for a mitigating circumstance"; and (ii) "The simple fact is they've not offered you any effect [sic], and they certainly haven't offered you any effect [sic] that would lead to an excuse or even a partial excuse as to what he was doing down there that night." Defendant argues that the prosecutor's arguments about mitigating circumstances were a misstatement of the law and that the statements limited the jury from giving full consideration to the mitigating evidence.

As we have often said, "the conduct of arguments of counsel to the jury must necessarily be left largely to the sound discretion of the trial judge," *State v. Whiteside*, 325 N.C. at 398, 383 S.E.2d at 916.

Our review of the prosecutor's closing argument reveals that before discussing the specific mitigating circumstances at issue in this case and before making the statements defendant contends are error, the prosecutor defined mitigating circumstances pursuant to the pattern jury instructions. Specifically, the prosecutor stated that a

[m]itigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing—self-defense would be a justification or excuse for a killing—or to reduce it to a lesser degree of crime than first-degree murder—something that would drop this down to a second-degree murder; but—and this is it—but may be considered as ext[e]nuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first-degree murders. That is the definition of a mitigating circumstance.

After defining mitigating circumstances pursuant to the pattern jury instructions and noting that the defendant must prove mitigating cir-

cumstances by a preponderance of the evidence, the prosecutor began reviewing defendant's forty-six submitted mitigating circumstances. The prosecutor read mitigating circumstances six through thirteen and then stated they "[m]ay be considered as ext[e]nuating or reducing the moral culpability of the killing by making it less deserving of extreme punishment other than first-degree murder. You deem the weight you give those." It was after the correct definition of mitigating circumstances was given two times that the prosecutor made the statement defendant argues was erroneous.

Viewed in its entirety, the prosecutor's argument did not misrepresent mitigating circumstances to the jury. We conclude that in light of the earlier definitions of mitigating circumstances given by the prosecutor, the trial court did not abuse its discretion in allowing these additional remarks to be made.

Furthermore, the trial court correctly instructed the jury as to the meaning of mitigating circumstances after the prosecutor had finished his closing argument. Assuming *arguendo* that the prosecutor's statements were erroneous, the error was cured by the trial court's proper instructions. *See State v. Anderson*, 322 N.C. at 38, 366 S.E.2d at 469 (holding that any prejudice resulting from misstatements of law made by the prosecutor during closing was cured by the trial court's proper instruction on the applicable law); *see also State v. Gladden*, 315 N.C. 398, 426, 340 S.E.2d 673, 690-91, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986).

[13] Defendant also argues that the trial court erred when (i) it refused to let defendant argue to the jurors that they should consider that defendant's crime did not fit within many statutory aggravating circumstances not discussed by the State, and (ii) it did not let defendant argue the significance of the danger defendant had exposed himself to when he testified against inmates who would, like defendant, be incarcerated in the North Carolina Department of Correction. After reviewing defendant's closing argument, we conclude that the trial judge did not abuse his discretion by restricting defendant's argument.

Defendant attempted to argue, "I want to tell you the statutory aggravating factors that the State has not presented." The prosecutor objected, and a *voir dire* was held on the issue of the propriety of defendant's argument. The trial court ruled that pursuant to this Court's decision in *State v. Brown*, 306 N.C. 151, 293 S.E.2d 569, *cert.*

*denied,* 459 U.S. 1080, 74 L. Ed. 2d 642 (1982), it would sustain the prosecution's objection to this line of argument. In *Brown* this Court held that it was not error not to submit the absence of a particular aggravating circumstance as a mitigating circumstance, holding that the absence of an aggravating circumstance did not show "the presence of a mitigating one." *Id.* at 179, 293 S.E.2d at 587.

We conclude that the trial court's ruling that defendant could not argue about the aggravating circumstances that the State had not presented was not "manifestly unsupported by reason," as the trial court's decision was based on its belief that absence of an aggravating circumstance is not evidence of a mitigating circumstance. This belief was based on a reasonable interpretation of this Court's decision in *State v. Brown,* 306 N.C. 151, 293 S.E.2d 569.

[14] Finally, defendant argues that the trial court abused its discretion when it did not allow him to argue that some of the people defendant had testified against would be waiting for him when he went to prison. The trial court instructed the jury to disregard this argument, stating that "there is nothing in the record with regard to the individuals referred to in these matters of where they are[,] what their intentions are—motivations—or what their relationship with the defendant would be now." The trial court did allow defendant to ask the jury to consider the fact that defendant had testified or was ready to testify against people who had received prison sentences in the North Carolina Department of Correction.

Trial counsel are "entitled to argue all the facts submitted into evidence, as well as any reasonable inferences therefrom." *State v. Conaway,* 339 N.C. at 524, 453 S.E.2d at 847. The trial court did not allow the argument in question to be made based on the fact that no evidence was presented as to the state of mind of the criminals defendant was willing to testify against or if these people were in fact waiting for defendant to arrive at prison. The trial court did allow defendant to argue facts based on the evidence that had been presented to the jury. We conclude that the trial court's decision that the evidence and any reasonable inference to be made from the evidence did not support an argument that people were waiting for defendant in prison was not "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." *Hennis,* 323 N.C. at 285, 372 S.E.2d at 527. Defendant's assignment of error is overruled.

ADDITIONAL ISUES

**[15-24]**   Defendant raises ten additional issues which he concedes have been decided against his position by this Court: (i) the trial court erred by reinstructing the jurors that they "may" consider mitigating circumstances at Issues Three and Four, after the initial instruction informed the jurors that they "must" consider mitigating circumstances at that stage; (ii) the trial court violated defendant's rights by submitting the aggravating circumstance that the murder was committed while defendant was engaged in the commission of a robbery; (iii) the trial court violated defendant's rights by not allowing him to question jurors about their conceptions of life imprisonment and parole eligibility for a person convicted of first-degree murder; (iv) the trial court committed plain error by allowing the prosecution to present the testimony of the victim of a prior robbery, when defendant had already admitted committing the robbery during his testimony and had indicated a willingness to stipulate to the existence of the robbery conviction; (v) the trial court improperly defined robbery as a felony involving violence or the threat of violence, thereby expressing an opinion on an aggravating circumstance; (vi) the trial court committed plain error by defining mitigating circumstances as matters about a crime making a punishment less than death appropriate; (vii) the trial court committed plain error by instructing the jury that to find a nonstatutory mitigating circumstance, the jury first had to find it existed and then whether it had mitigating value; (viii) the trial court committed plain error by instructing jurors on their consideration of mitigating circumstances at Issue Three; (ix) the trial court committed plain error by instructing the jurors they had a duty to recommend death if they found the sentencing issues against defendant; and (x) the trial court committed plain error by instructing the jurors that they had to reach unanimous verdicts on Issues Three and Four.

We have considered defendant's arguments with respect to each of these issues and have found no reason to depart from our prior holdings, which defendant has correctly recognized as dispositive. *See State v. Ward*, 338 N.C. 64, 122, 449 S.E.2d 709, 742 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 1013 (1995). Therefore, we overrule these assignments of error.

**[25]**   Defendant also sets forth three additional issues in this portion of his brief, which he does not concede have been decided against him. First, defendant argues that the trial court committed plain error

by erroneously instructing the jury on theories of guilt and premeditation and deliberation that were not supported by the evidence. Specifically, defendant argues that the trial court should not have instructed that evidence of the "use of grossly excessive force" could be used to infer premeditation and deliberation. Defendant did not object to the instruction at trial.

In *State v. Smith*, 328 N.C. 99, 138, 400 S.E.2d 712, 734 (1991), this Court held that there was evidence of the use of grossly excessive force where the defendant shot the victim two times at close range. *See also State v. Cummings*, 326 N.C. 298, 316-17, 389 S.E.2d 66, 76-77 (1990) (holding that there was evidence of grossly excessive force where the defendant shot the victim once in the arm and then in the base of the skull). The evidence in this case supported a finding that the victim was shot twice in the body, and then defendant moved closer to the victim and shot him in the head. The evidence in this case supports an instruction to the jury that premeditation and deliberation may be established by proof of circumstances from which premeditation and deliberation may be inferred, such as "use of grossly excessive force." We conclude that defendant's assignment of error is without merit.

[26] Second, defendant argues that the trial court committed plain error and violated defendant's rights to due process in its instructions to the jury on aiding and abetting and acting in concert by failing to instruct the jury that a defendant cannot be guilty under these theories unless he is actually or constructively present at the scene of the crime. Defendant did not object to the instruction at trial.

As defendant did not object to the trial court's failure to instruct that actual or constructive presence is required for defendant to be found guilty under these theories, this court will only review the assignment of error for plain error. *Collins*, 334 N.C. at 62, 431 S.E.2d at 193. As noted earlier, to conclude there is plain error, the "error in the trial court's jury instructions must be 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *Id.* (quoting *State v. Bagley*, 321 N.C. at 213, 362 S.E.2d at 251). We conclude that any error in the trial court's instructions cannot rise to the level of plain error because all the evidence, and defendant's own testimony, established that defendant was in fact present at the scene of the crime. Hence, any potential error in the instruction as to this particular fact could not have been so funda-

mental as to amount to a miscarriage of justice or probably have resulted in the jury reaching a different verdict. Defendant's assignment of error is overruled.

[27] Finally, defendant argues that the trial court committed plain error by instructing the jury that defendant has the burden of establishing mitigating circumstances by a preponderance of the evidence, which the court then indicated meant that defendant had to "satisfy" the jury as to the existence of mitigating circumstances. Defendant argues that this definition of preponderance of the evidence was insufficient and constituted plain error. This Court rejected defendant's argument in *State v. Payne*, 337 N.C. 505, 532-33, 448 S.E.2d 93, 109 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 292 (1995). Defendant presents no new argument which persuades us we should overrule our previous decision. Defendant's assignment of error is overruled.

PROPORTIONALITY

[28] Having found defendant's trial and capital sentencing proceeding to be free of prejudicial error, we are required by N.C.G.S. § 15A-2000(d)(2) to review the record and determine (i) whether the record supports the jury's findings of the aggravating circumstances upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *State v. McCollum*, 334 N.C. 208, 239, 433 S.E.2d 144, 161 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895, *reh'g denied*, —— U.S. ——, 129 L. Ed. 2d 924 (1994).

The existence of the following two aggravating circumstances was found by the jury: (i) that defendant had previously been convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3); and (ii) that this murder was committed while defendant was engaged in the commission of robbery with a dangerous weapon, N.C.G.S. § 15A-2000(e)(5).

After a thorough review of the transcript, record on appeal, and briefs and oral arguments of counsel, we are convinced that the jury's finding of each of these aggravating circumstances was supported by the evidence. We also conclude that nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finally, we must consider whether the imposition of the death penalty in defendant's case is proportionate to other cases in which the death penalty has been affirmed, considering both the crime and the defendant. *State v. Robinson*, 336 N.C. 78, 133, 443 S.E.2d 306, 334 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 650 (1995). The purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137, *reh'g denied*, 448 U.S. 918, 65 L. Ed. 2d 1181 (1980). We compare this case to similar cases within a pool which we defined in *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983), and in *State v. Bacon*, 337 N.C. 66, 106-07, 446 S.E.2d 542, 563-64 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 1083 (1995). Our consideration on proportionality review is limited to cases roughly similar as to the crime and the defendant, but we are not bound to cite every case used for comparison. *State v. Syriani*, 333 N.C. 350, 400, 428 S.E.2d 118, 146, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 341 (1993), *reh'g denied*, —— U.S. ——, 126 L. Ed. 2d 707 (1994). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green*, 336 N.C. at 198, 443 S.E.2d at 47.

Defendant was convicted of first-degree murder on the theories of premeditation and deliberation, felony murder, and lying in wait. He was also convicted of robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, and felonious larceny. The jury found both the submitted aggravating circumstances: (i) that defendant had previously been convicted of a felony involving the use or threat of violence to the person and (ii) that this murder was committed while defendant was engaged in the commission of robbery with a dangerous weapon.

Of the forty-six mitigating circumstances submitted, the jury found thirty-two of them. While six statutory mitigating circumstances were submitted to the jury, only four were found. The four statutory mitigating circumstances found by the jury were: (i) defendant's age at the time of the murder, N.C.G.S. § 15A-2000(f)(7); (ii) that defendant testified truthfully on behalf of the State in the prosecution

of Michael Dial for the felony of murder, N.C.G.S. § 15A-2000(f)(8); (iii) that defendant testified truthfully on behalf of the State in the prosecution of Wendell House for the felony of murder, N.C.G.S. § 15A-2000(f)(8); and (iv) the catchall mitigating circumstance, N.C.G.S. § 15A-2000(f)(9). The jury declined to find the statutory mitigating circumstances that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1), and that this murder was committed by another person and defendant was only an accomplice in or accessory to the murder and his participation in the murder was relatively minor, N.C.G.S. § 15A-2000(f)(4). The nonstatutory mitigating circumstances found by the jury related to (i) defendant's activities as a police informant both prior to his arrest in connection with this murder and after his incarceration while awaiting trial; (ii) defendant's service in the Marine Corps; (iii) defendant's care of his alcoholic father before he died; and (iv) defendant's participation in church, sports, and other school activities.

We begin our analysis by comparing this case to those cases in which this Court has determined the sentence of death to be disproportionate. This Court has determined the death sentence to be disproportionate on seven occasions. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170; *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). Of these seven cases, three involved murders committed during armed robbery: *State v. Benson, State v. Stokes*, and *State v. Young*. However, none of these cases is sufficiently similar to the instant case to merit a finding of disproportionality here.

In *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517, the defendant was convicted of first-degree murder solely on the theory of felony murder. The victim died of cardiac arrest after being robbed and shot in the legs by the defendant. The sole aggravating circumstance found by the jury was that the crime was committed for pecuniary gain. This Court determined that the death sentence was disproportionate based in part on the fact that it appeared defendant intended only to rob the victim, as defendant shot the victim in the "legs rather than a more vital part of his body." *State v. Benson*, 323 N.C. at 329, 372 S.E.2d at 523. In this case, unlike in *Benson*, defendant was convicted on the theories of premeditation and deliberation, felony murder, and

lying in wait. Also, the jury here found two aggravating circumstances, that defendant had previously been convicted of a violent felony and that the murder occurred while defendant was engaged in a robbery. Further, defendant clearly intended to kill the victim, shooting him twice in the body and once in the head.

In *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653, the defendant was one of four individuals who was involved in the beating death of a robbery victim. Defendant was found guilty of first-degree murder solely on the theory of felony murder. The sole aggravating circumstance found by the jury was that the crime was especially heinous, atrocious, or cruel. Here, defendant was convicted on the theories of premeditation and deliberation, felony murder, and lying in wait. Unlike in *Stokes*, in the instant case there was strong evidence of premeditation and deliberation. The jury in this case found two aggravating circumstances. Additionally, there was evidence that defendant was the instigator of the robbery that led to the victim's murder and was the only person who actually shot the victim.

In *State v. Young*, 312 N.C. 669, 325 S.E.2d 181, the defendant, who had been drinking heavily all day, suggested to two other men that they rob and kill the victim to be able to purchase more alcohol. The three walked to the victim's house and entered. Once inside, they robbed and murdered the victim. The jury found as aggravating circumstances that the murder was committed for pecuniary gain and during the course of a robbery or burglary.

This case is distinguishable from *State v. Young*. First, unlike in *State v. Young*, the defendant in the instant case was convicted of first-degree murder not only on the theory of felony murder, but also on the theories of premeditation and deliberation and lying in wait. Further, the killing in *Young* was not as coldly calculated as in the instant case, where defendant planned this robbery-murder for several weeks and lay in wait for the victim at the victim's home. Unlike in *Young*, in the instant case there is no evidence that defendant was intoxicated at the time of the murder.

We conclude that this case is not sufficiently similar to any of the above cases to warrant a finding of disproportionality in this case.

Further, in support of his argument that his death sentence is disproportionate, defendant contends that the majority of robbery-murder cases has resulted in sentences of life imprisonment. However, this Court has long rejected any mechanical or empirical

approach to the comparison of cases that are superficially similar. *State v. Robinson*, 336 N.C. at 139, 443 S.E.2d at 337. In conducting proportionality review, our attention is focused on an " 'independent consideration of the individual defendant and the nature of the crime or crimes which he has committed.' " *Id.* (quoting *State v. Pinch*, 306 N.C. at 36, 292 S.E.2d at 229).

While we recognize that juries have returned life sentences for several robbery-murders, our review of robbery-murder life cases in the pool reveals that the instant case is distinguishable when compared to a majority of those cases. Many of these cases involved robbery-murders at a convenience store or the mitigating circumstance that the defendant's ability to appreciate the criminality of his conduct was impaired. *See, e.g., State v. Medlin*, 333 N.C. 280, 426 S.E.2d 402 (1993); *State v. Abdullah*, 309 N.C. 63, 306 S.E.2d 100 (1983). In defendant's case, the victim was murdered in the sanctity of his own home; and there was no evidence of any impairment of defendant's ability to appreciate the criminality of his conduct.

Defendant cites two robbery-murder cases in which juries returned life sentences and which he claims are most similar to his case. Both cases involved the aggravating circumstance that defendant had been previously convicted of a violent felony.

In *State v. Black*, 328 N.C. 191, 400 S.E.2d 398 (1991), defendant and Mack Lee Nichols burst into a video store, where Nichols killed the owner and seriously wounded a clerk. The two men then robbed the store and fled. Defendant was convicted of first-degree murder on the theory of felony murder. The jury found as aggravating circumstances that the defendant had a previous conviction of a violent felony and that the murder was committed for pecuniary gain. The jury found the statutory mitigating circumstance that defendant was a minor accomplice in a capital felony committed by another person.

In *State v. Oliver*, 334 N.C. 513, 434 S.E.2d 202 (1993), defendant and three accomplices attempted to rob two men in the house where they were staying. Defendant shot the first man when he opened the door and shot the second man as he fled from the apartment. Defendant was convicted solely on the theory of felony murder. The jury found as aggravating circumstances that the defendant had previously been convicted of a violent felony, that the murder was committed while defendant was engaged in a burglary, and that the murder was committed for pecuniary gain. The jury found two statutory mitigating circumstances: (i) that the murder was committed while

the defendant was mentally or emotionally disturbed and (ii) that defendant's capacity to appreciate the criminality of his conduct at the time of the murder was impaired.

Unlike in *Black* and *Oliver*, where the defendants were convicted solely upon the theory of felony murder, in the instant case defendant was also convicted of first-degree murder on the theories of premeditation and deliberation and lying in wait. A conviction based on premeditation and deliberation indicates a more cold-blooded and calculated killing than a conviction based on felony murder. *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991). Additionally, while the victim in *Black* was shot only one time, in the instant case the victim was shot three times, once after he had fallen to the ground wounded. Further, in *Black* the defendant did not actually shoot the victim. In the instant case the evidence indicated that defendant was the person who actually shot the victim. Unlike in *Oliver*, in the instant case the issues of any mental or emotional disturbance and defendant's ability to appreciate the criminality of his conduct were not raised by the evidence and were, therefore, not before the jury for its consideration.

We conclude that this case is most analogous to cases in which this Court has held the death penalty not to be disproportionate.

The most significant feature of this case is that defendant committed this murder by lying in wait for his victim. In *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, the defendant lay in wait under the victim's window until the victim was in the most opportune place to be shot. *Id.* at 231-32, 358 S.E.2d at 34. The defendant then shot the victim once in the head, killing him almost instantly. *Id.* The jury found the sole aggravator that defendant had previously been convicted of a felony involving the use or threat of violence to a person. *Id.* at 219, 358 S.E.2d at 26.

In affirming the death penalty in *Brown*, the Court emphasized that the crime of first-degree murder by lying in wait at the victim's home "shocks the conscience, not only because a life was senselessly taken, but because it was taken by the surreptitious invasion of an especially private place, one in which a person has a right to feel secure." *Id.* at 231, 358 S.E.2d at 34.

As in *Brown*, the murder in the instant case was calculated and deliberate. Defendant discussed killing the victim prior to going to his

residence. He went to the victim's home and hid behind a utility building. Immediately after the victim exited his car in his carport, defendant shot him three times. Defendant made no attempt to rob the victim until after he shot him. As in *Brown*, "[i]n the lengthy, purposeful plotting, and in the execution of his crime, the defendant displayed a cold callousness and obliviousness to the value of human life." *Id.* at 232, 358 S.E.2d at 34. Defendant had demonstrated these qualities before, including the commission of a common-law robbery in which he held a gun to his victim's head.

While in *Brown* the jury found only the aggravating circumstance that defendant had previously been convicted of a felony involving the use or threat of violence to the person, in defendant's case the jury found as an additional aggravating circumstance that defendant committed the murder while engaged in a robbery.

In *State v. Ward*, 338 N.C. 64, 449 S.E.2d 709, the defendant decided to rob and perhaps kill the victim in order to obtain the proceeds from the victim's small convenience store. Armed with a semi-automatic rifle, defendant and Wesley Harris hid in the bushes behind the victim's home. *Id.* at 128, 449 S.E.2d at 745. When the victim arrived and exited her truck, defendant opened fire. *Id.* The victim suffered at least three nonfatal wounds before she was killed by a bullet to the head. *Id.* Defendant and Harris then proceeded to rob the victim and flee the scene. *Id.*

Although the sole aggravating circumstance found in *Ward*, that the murder was committed for pecuniary gain, was not submitted in the instant case, we find the facts of *Ward* to be nearly identical to the crime at issue. Both cases involved cold and calculated murders committed by lying in wait for the victim at the victim's own residence. In each case the defendant opened fire upon the unsuspecting victim, who was unaware of the danger and had no opportunity to seek protection. In each case only after the victim was felled did the defendant seek to rob the victim. As in *State v. Brown*, in both these cases "the defendant displayed a cold callousness and obliviousness to the value of human life." *State v. Brown*, 320 N.C. at 232, 358 S.E.2d at 34.

In light of the above and the calculated and unprovoked nature of the murder in this case, we find that this case rises to the level of cases in which this Court has approved the death penalty. Based on the experienced judgment of the members of this Court, we conclude that defendant's death sentence is not excessive or disproportionate.

We hold that defendant received a fair trial and capital sentencing proceeding free from prejudicial error. In comparing his case to similar cases in which the death penalty was imposed and in consideration of both the crime and defendant, we cannot hold as a matter of law that the death penalty was disproportionate or excessive.

NO. 92CRS4663—ROBBERY WITH A DANGEROUS WEAPON—NO ERROR.

NO. 92CRS4664—FIRST-DEGREE MURDER—NO ERROR.

NO. 92CRS5671—CONSPIRACY TO COMMIT ROBBERY WITH A DANGEROUS WEAPON—NO ERROR.

NO. 92CRS5672—FELONIOUS LARCENY—JUDGMENT ARRESTED.